UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARIA C. GARCIA,

                    Plaintiff,

    -against-

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,*

                    Defendant.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-2140 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Maria C. Garcia brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a decision by the Social Security Administration ("SSA") that she is not disabled and therefore not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). Garcia argues the SSA made two errors in denying her application for benefits: it (1) failed to properly weigh the medical evidence, and (2) failed to properly evaluate Garcia's credibility. Garcia has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to reverse and remand for a calculation and award of benefits, or, in the alternative, to reverse and remand for a new hearing and decision. The Commissioner of Social Security has filed a cross-motion for judgment on the pleadings pursuant to Rule 12(c) to affirm the SSA's decision and dismiss the action. For the reasons set forth below, Garcia's motion is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED to the SSA for further proceedings.

---

    *   Plaintiff's Complaint named Michael J. Astrue, Commissioner of Social Security, as Defendant in this case. On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She therefore has been substituted as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d). See also 42 U.S.C. § 405(g).

1

## I.  BACKGROUND

### A.  The Plaintiff

Garcia was born on May 10, 1959, and worked for a single employer for twenty-three years as a secretary, administrative assistant, and mail courier. (Administrative Record (Dkt. 21) ("R.") at 31, 119.) She has been treated by several doctors for back pain and had back surgery in 2006. (Id. at 31, 61, 196-97.) She stopped working due to her back pain on December 31, 2009. (Id. at 30-31.)

### B.  Procedural History

Garcia applied for DIB on January 27, 2010, and SSI on February 18, 2010, asserting in each application that she had been disabled since December 31, 2009. (Id. at 49-50, 54, 119-23.) She claimed her ability to work was limited by back pain, depression, inability to concentrate, confusion, low blood sugar, migraine headaches, and dizziness. (Id. at 151.) The SSA denied her applications in April 2010. (Id. at 49-50, 74-79.) Garcia requested a hearing and appeared before Administrative Law Judge ("ALJ") Margaret L. Pecoraro on May 12, 2011. (Id. at 26-48, 80.) On August 19, 2011, the ALJ concluded Garcia was not disabled within the meaning of the Social Security Act. (Id. at 51-73.) Garcia then requested review of the decision by the SSA Appeals Council and was denied review on March 26, 2012, rendering the ALJ's decision the final decision of the Commissioner. (Id. at 12-18, 25.) See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

On May 1, 2012, Garcia filed the instant Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the SSA's determination that she was not disabled and therefore not entitled to DIB and SSI. (Compl. (Dkt. 1).) Garcia moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to reverse and remand for a

2

calculation and award of benefits, or, in the alternative, to reverse and remand for a new hearing and decision. (See Pl. Mem. (Dkt. 16) at 17.) The Commissioner cross-moved for judgment on the pleadings pursuant to Rule 12(c) to affirm the SSA's decision and dismiss the action. (See Def. Mem. (Dkt. 18) at 1, 25.)

### C. Relevant Medical Evidence

Garcia supports her applications for disability benefits with medical evidence from several medical professionals. Douglas Schottenstein, M.D., a pain management and neurology specialist, began treating Garcia in November 2009. (R. at 244, 251, 258.) In a report dated March 1, 2010, he diagnosed her with lumbosacral radiculopathy, noting that she "cant [sic] sit/stand/walk for long peroids [sic] of time."[1] (Id. at 245, 252, 254.) Dr. Schottenstein estimated that she could sit "up to 6 hours per day," "[s]tand and/or [w]alk . . . up to 2 hours per day," and "occasionally" lift and carry a maximum of fifteen pounds. (Id. at 253.) In a report dated May 16, 2011, Dr. Schottenstein again diagnosed lumbosacral radiculopathy and opined that it would be "necessary or medically recommended" that Garcia "not . . . sit continuously" or "stand/walk continuously" in a work environment, and that she "should not lift, bend, [or] reach." (Id. at 349, 351-52, 356.) This time, Dr. Schottenstein estimated that Garcia could sit for only two hours, "[s]tand/[w]alk" for two hours, "[o]ccasionally" lift and carry five to ten pounds, and "[f]requently" lift and carry zero to five pounds. (Id. at 351-52.)

Nidia Carrero, M.D., a pain management specialist, began treating Garcia in January 2011 and diagnosed her with failed back syndrome, myofascial pain syndrome, and lumbar muscle spasms in a report dated June 2, 2011. (Id. at 397, 404.) Dr. Carrero also indicated that Garcia should not sit or stand/walk continuously in a work setting. (Id. at 399-400.) Dr. Carrero estimated that Garcia could sit for three to four hours, stand/walk for two to three hours, and

---

[1] The ALJ's decision incorrectly refers to the date of this report as "March 2011." (See Rec. at 62, 254.)

occasionally lift and carry zero to five pounds. (Id.) In a November 1, 2011 report submitted to the SSA Appeals Council, Dr. Carrero made the same three diagnoses, this time estimating that Garcia could sit for two to three hours, stand/walk for one hour, and occasionally lift zero to ten pounds and carry zero to five pounds. (Id. at 405-06, 409-10, 412.)

Dana Bignami, RPAC, a physician assistant to Dr. Glenn Muraca, who began treating Garcia in 2009, diagnosed Garcia with chronic back pain and neuropathy in a report dated April 27, 2011. (Id. at 300, 307.) Ms. Bignami noted that "sitting and walking for long periods of time" was a precipitating factor for Garcia's pain and that she should not sit or stand/walk continuously in a work setting. (Id. at 302-03.) Ms. Bignami estimated that Garcia could sit for four hours, stand/walk for one hour, and occasionally lift and carry zero to five pounds. (Id.)

Other evidence in the record included a lumbar spine study conducted during the course of back surgery on February 21, 2006. (Id. at 197.) The exam revealed that Garcia had degenerative disc disease. (Id.)

Weighing the abovementioned and other evidence, the ALJ found that Garcia "has the residual functional capacity to perform the full range of sedentary work," because she "is capable of lifting/carrying and pushing/pulling ten pounds occasionally and less than ten pounds frequently," and "[s]he can sit for six hours and stand/walk for two hours in an eight-hour workday." (Id. at 59-60.) See 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 96-9P, 1996 WL 374185, at *3 (July 2, 1996). The ALJ then found that Garcia could perform her past relevant work as an administrative assistant and secretary. (R. at 67.) The ALJ concluded that Garcia was not disabled within the meaning of the Social Security Act. (Id.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotation marks omitted). A court is required to "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). In addition to the pleadings, the court may consider "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks omitted). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) the findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C.     Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.

If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.

If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059,

at *10 (citing Carroll, 705 F.2d at 642). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. (citing Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Shaw, 221 F.3d at 134). That duty is "heightened" when the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III.  DISCUSSION

Garcia raises several challenges to the ALJ's decision. Garcia argues the ALJ failed to properly weigh the medical evidence and failed to adequately develop the record with respect to the medical evidence. (Pl. Mem. at 8-14.) Garcia also contends the ALJ failed to properly evaluate her credibility. (Id. at 14-17.)

### A.  The ALJ's Treatment of the Medical Evidence

Under the SSA's "treating physician rule," the ALJ must give a treating physician's opinion "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). On the other hand, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider several factors in determining how much weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); accord 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "After considering the above factors, the ALJ must 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'" Burgess, 537 F.3d at 129 (quoting Halloran, 362 F.3d at 33). The ALJ must provide "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A treating physician is a physician who "who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. The ALJ deemed Dr. Schottenstein and Dr. Carrero to be treating physicians, but not Ms. Bignami, as she is not an "acceptable medical source" within the meaning of 20 C.F.R. §§ 404.1513 and 416.913. (See R. at 61, 64-65.) The parties do not dispute these conclusions. (See Pl. Mem. at 9-13; Def. Mem. at 21-23.)

As will be explained below, the court holds that the ALJ correctly concluded that Dr. Schottenstein's and Dr. Carrero's reports were not controlling due to conflicting evidence in the record. However, after this initial step in the application of the treating physician rule, the ALJ committed errors that require remand. First, the ALJ failed to develop the record with respect to Dr. Schottenstein's March 2010 and May 2011 reports. Second, the ALJ failed to provide "good reasons" for the weight given to Dr. Carrero's June 2011 report. Third, the ALJ failed to develop the record with respect to Dr. Carrero's June 2011 report.

1. Dr. Schottenstein's March 2010 and May 2011 Reports

The ALJ accorded Dr. Schottenstein's March 2010 report "great, but not controlling weight," finding it supported by the overall record and consistent with a capacity for sedentary work. (R. at 62.) The ALJ gave Dr. Schottenstein's May 2011 report only "limited weight," which was also not controlling. (Id. at 62-63.) The ALJ found that the later report was not

9

supported by the record and was unconvincing because "Dr. Schottenstein's assessment occurred more than one year after he last examined the claimant" and lacked evidence of a worsening condition or explanation for the change.[2] (Id.)

The ALJ correctly concluded that neither report was controlling because the reports conflict with one another. Snell, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling."); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For example, Dr. Schottenstein's March 2010 report indicated that Garcia could sit for up to six hours and stand and/or walk for up to two hours per day, which is consistent with a residual functional capacity for sedentary work. (R. at 253.) See SSR 96-9P, 1996 WL 374185, at *3. In contrast, Dr. Schottenstein's May 2011 report indicated that Garcia could only sit for two hours and stand/walk for two hours in a day. (R. at 351.)

The ALJ also appears to have weighed Dr. Schottenstein's reports under the factors required by the relevant regulations, including the length of the treatment relationship, the frequency of examination, supportability, and consistency. (R. at 62-63.) See McLean v. Astrue, No. 08-CV-4989 (NGG), 2012 WL 1886774, at *5 (E.D.N.Y. May 23, 2012) (explaining that "[w]hile an ALJ need not mechanically recite each of these factors," the ALJ must "provide[] 'good reasons' for the weight given to a treating physician's opinion" and "comprehensively set forth reasons for the weight assigned to a treating physician's opinion" (quoting Halloran, 362 F.3d at 33)); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

However, in light of these inconsistent reports, the ALJ was under a duty to develop the record to seek an explanation for the inconsistency. "[I]f an ALJ perceives inconsistencies in a

---

[2] In fact, Dr. Schottenstein's May 16, 2011, report was issued slightly less than one year after he last examined Garcia on May 24, 2010. (See Rec. at 349, 356.)

10

treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998); see also Shaw, 221 F.3d at 131 ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . ."). While the ALJ was skeptical of Dr. Schottenstein's May 2011 report because it lacked "evidence of a worsening condition" (R. at 63), had the ALJ sufficiently developed the record, Dr. Schottenstein "might have been able to provide a medical explanation for why [Plaintiff's] condition deteriorated over time," Clark, 143 F.3d at 118. Such deterioration is a legitimate possibility as significant time had passed between Dr. Schottenstein's two reports, other evidence in the record showed that Garcia had *degenerative* disc disease, and Garcia testified that her condition got "worse and worse." (R. at 31, 197, 254, 356.) See Balodis v. Leavitt, 704 F. Supp. 2d 255, 266-67 (E.D.N.Y. 2010) (criticizing an ALJ for failing to consider the possibility that the plaintiff's condition had deteriorated and relying on similar reasoning).

The Commissioner contends the ALJ was not under an obligation to further develop the record because she possessed "a complete medical history," there were "no obvious gaps in the administrative record" (Def. Mem. at 22 (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999))), and "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve" (Def. Reply Mem. (Dkt. 20) at 3 (quoting Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002))). However, the ALJ cited a clear gap in the record as a reason for her decision: she found "no evidence of a worsening condition." (R. at 63.) Moreover, to suggest that Dr. Schottenstein genuinely conflicted his own prior report stretches credulity. The ALJ might not be convinced by Dr. Schottenstein's explanation—or lack thereof—in his later report, but the record should be

11

further developed to provide Dr. Schottenstein the opportunity to further explain the changes in his medical findings.

Although the ALJ's failure to develop the record with respect to Dr. Schottenstein alone merits remand to the SSA, an additional error must be noted. The ALJ made a typographical error in dating Dr. Schottenstein's March 1, 2010, report as "March 2011," and then, relying on the incorrect date, cited as a factor in the weight assigned to that report the notion that "over one year" had passed since Garcia's last exam. (Id. at 62, 254.) In fact, Dr. Schottenstein had examined Garcia a few days earlier, on February 25, 2010. (Id. at 244.) And Dr. Schottenstein made his new findings in his report of May 16, 2011—not merely a few months later, but over one year and two months later. (Id. at 356.) This is an unfortunate and significant error, that potentially obscured the possibility of significant medical change over a substantial period of time, in the context of a decision that dramatically affects Garcia's life and livelihood. See Gallivan v. Apfel, 88 F. Supp. 2d 92, 99 (W.D.N.Y. 2000) (finding an egregious typographical error to be "further evidence that remand is necessary").

2.  Dr. Carrero's June 2011 Report

The ALJ accorded Dr. Carrero's June 2011 report "some, but not controlling weight."[3] (R. at 65.) Though the ALJ acknowledged Dr. Carrero's treating relationship with Garcia, the ALJ found that the overall record supported Garcia's capacity for sedentary work. (Id.) The ALJ noted that Garcia worked "for two years, despite her condition," and found no "substantive evidence of an intervening event that caused her condition to significantly deteriorate." (Id.)

---

[3] The court notes that "the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). In this case, the new evidence submitted to the Appeals Council included a November 1, 2011, questionnaire by Dr. Carrero indicating that Garcia could sit for only two to three hours and stand/walk for only one hour in a day, which does not appear to support the ALJ's decision. (Rec. at 405, 409, 412.)

12

The ALJ was entitled to decline to accord Dr. Carrero's report controlling weight as it is inconsistent with other substantial evidence in the record. Snell, 177 F.3d at 133; see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For example, there is an apparent conflict between Dr. Carrero's report, indicating that Garcia could sit for only three to four hours in a day, and Dr. Schottenstein's March 2010 report, indicating that Garcia could sit for up to six hours per day. (R. at 253, 399.)

The ALJ weighed Dr. Carrero's report using some of the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6), including the nature of the treatment relationship, supportability, and consistency. (R. at 65.) See McLean, 2012 WL 1886774, at *5. However, there are several flaws in the ALJ's analysis of Dr. Carrero's report, demonstrating that its accorded weight is not supported by "good reasons." First, the ALJ failed to explain why Dr. Carrero's June 2011 report was entitled to less weight than Dr. Schottenstein's older report of March 2010. See Ligon v. Astrue, No. 08-CV-1551 (JG), 2008 WL 5378374, at *12 (E.D.N.Y. Dec. 23, 2008) ("While it is certainly appropriate to consider prior physicians' statements, to give them greater weight than a treating physician's more recent findings without additional explanation amounts to legal error. It is possible, for example, that [Plaintiff's] condition deteriorated after he stopped being treated by [the prior physicians]."); see also Balodis, 704 F. Supp. 2d at 266 ("When there is such a lengthy time period between opinions, the ALJ must explain his decision to choose the earlier opinion over the more recent opinion where deterioration of a claimant's condition is possible."). Given the possibility and evidence of deterioration in Garcia's condition, as discussed above, the ALJ's lack of explanation amounts to a failure to provide "good reasons" for the weight accorded to Dr. Carrero's report. See

13

Halloran, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion . . . .").

Second, one of the reasons the ALJ provided was the absence of "substantive evidence of an intervening event that caused her condition to significantly deteriorate." (R. at 65.) It is unclear why a deterioration in Garcia's condition could only be precipitated by an "intervening event." The ALJ failed to explain why such an event was required, failed to explain what would constitute such an event, and failed to consider the possibility that deterioration could be continuous. As discussed above, Dr. Schottenstein's March 2010 report is more than one year older than Dr. Carrero's June 2011 report, Garcia was diagnosed with *degenerative* disc disease, and Garcia testified that her condition got "worse and worse." (R. at 31, 197, 254, 404.) See Balodis, 704 F. Supp. 2d at 266-67. The ALJ's analysis therefore cannot constitute "good reasons" for the weight accorded to Dr. Carrero's report. See Halloran, 362 F.3d at 33.

Moreover, if the ALJ was not satisfied with Dr. Carrero's explanation for Garcia's apparently deteriorating condition, the ALJ was required to develop the record to attempt to fill this "clear gap[] in the administrative record." Rosa, 168 F.3d at 79. "If asked, [the physician] might have been able to provide a medical explanation for why [Plaintiff's] condition deteriorated over time." Clark, 143 F.3d at 118. The court must remand so the ALJ can properly develop the relevant record and reassess whether a different conclusion is thereby warranted.

### 3. Ms. Bignami's April 2011 Report

The parties agree that Ms. Bignami, a physician assistant to Dr. Muraca, is not an "acceptable medical source" within the meaning of 20 C.F.R. §§ 404.1513 and 416.913. (See Pl. Mem. at 12-13; Def. Mem. at 23.) As such, Ms. Bignami's report is not entitled to controlling weight. SSR 06-03P, 2006 WL 2329939, at *2. Nonetheless, the ALJ must "consider all relevant evidence in the case record," including "opinion evidence from . . . medical sources who

14

are not 'acceptable medical sources.'" Id. at *4. "In weighing the opinions of [non-acceptable medical sources], the ALJ must use the same factors" set forth in the regulations and "must explain [her] decision." Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); see SSR 06-03P, 2006 WL 2329939 at *4, *6.

The ALJ accorded Ms. Bignami's April 2011 report "some weight." (R. at 64.) The ALJ noted that Ms. Bignami's report lacked supporting treatment records and found that it was inconsistent with evidence supporting a capacity for sedentary work. (Id.) The ALJ cited Garcia's ability to work "for two years with her condition" and found "no substantive evidence of a worsening condition." (Id.)

The ALJ appears to have weighed Ms. Bignami's report using factors such as supportability and consistency. (Id.) See SSR 06-03P, 2006 WL 2329939, at *4. On remand, the ALJ is directed to reevaluate the weight of Ms. Bignami's report and the other medical evidence in light of this opinion and any newly obtained evidence. While the ALJ concluded that there was "no substantive evidence of a worsening condition," the ALJ may consider and explain whether a deteriorating condition was evinced by Ms. Bignami's assessment that Garcia could sit for only four hours and stand/walk for one hour in a day. (R. at 64, 302.) See Hernandez v. Astrue, 814 F. Supp. 2d 168, 188 (E.D.N.Y. 2011) (criticizing an ALJ for the lack of "good reasons" for failing to consider a non-acceptable medical source). Additionally, the ALJ may further develop the record regarding treatment records from Ms. Bignami or Dr. Muraca. See Genovese v. Astrue, No. 11-CV-02054 (KAM), 2012 WL 4960355, at *15 (E.D.N.Y. Oct. 17, 2012) (remanding to develop the record with respect to a social worker, who was not an acceptable medical source); Kilkenny v. Astrue, No. 05-CV-6507 (KMK), 2009 WL

1321692, at *16 (S.D.N.Y. May 12, 2009) (remanding with instructions to obtain additional records, including those of a social worker); see also Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996) (remanding for further development of the record when medical history was missing, including treatment notes from a social worker).

### B.    The ALJ's Credibility Determination

The ALJ did not find Garcia's allegations and testimony "fully credible" in light of several factors, including her treatment, medication, past work, and daily activities. (R. at 66-67.) See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7P, 1996 WL 374186, at *3, *5. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms, to the extent they are inconsistent with the above residual functional capacity assessment, are accorded limited weight." (R. at 66.)

Because the record was not fully and properly developed, the assessment of Garcia's credibility was tainted by an incomplete picture of the evidence. On remand, the ALJ is instructed to reevaluate Garcia's credibility in light of any new evidence to be adduced. See Rosa, 168 F.3d at 83 (instructing the ALJ to reassess the claimant's credibility after further developing the record).

The court also notes two additional issues regarding the reevaluation of Garcia's credibility on remand. First, the ALJ discounted Garcia's claim of disability in part because she underwent "mostly conservative treatment" and "[h]er medications dosage and frequency is [sic] not consistent with pain levels so severe that it [sic] precludes work." (R. at 66.) However, an ALJ should not "impose[] [her] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." Shaw, 221 F.3d at 134-35.

16

Indeed, such a notion may not "permit the Commissioner to overcome an otherwise valid medical opinion." Id.

Second, the ALJ declared that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms, to the extent they are inconsistent with the above residual functional capacity assessment, are accorded limited weight." (R. at 66.) This conclusion is problematic because it "implies that ability to work is determined first and is then used to determine the claimant's credibility," which "gets things backwards." Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012). Rather, the claimant's credibility must be one component of the assessment of her residual functional capacity. Id. at 645-46. Courts in this district have adopted the Seventh Circuit's reasoning on this issue. See Otero v. Colvin, No. 12-CV-4757, 2013 WL 1148769 (JG), at *7 (E.D.N.Y. Mar. 19, 2013); Perrin v. Astrue, No. 11-CV-5110 (FB), 2012 WL 4793543, at *5 (E.D.N.Y. Oct. 9, 2012).

## IV. CONCLUSION

Because "the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate," rather than remand for a calculation of benefits. Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005). Therefore, Garcia's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion for judgment on the pleadings is DENIED, and this case is REMANDED to the SSA for further proceedings consistent with this opinion. Specifically, the Commissioner is directed to:

1. Develop the record to seek an explanation for perceived inconsistencies in Dr. Schottenstein's March 2010 and May 2011 reports.

2. Develop the record to seek further explanation from Dr. Carrero for the apparent deterioration of Garcia's condition.

17

3.  Reevaluate the weight of the medical evidence in light of this opinion and any newly obtained evidence.

4.  Reassess Garcia's credibility in light of this opinion and any newly obtained evidence.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 5, 2014

NICHOLAS G. GARAUFIS
United States District Judge